ORAL ARGUMENT NOT YET SCHEDULED

# 13-7004

# United States Court of Appeals For The District of Columbia Circuit

◆

COMMISSIONS IMPORT EXPORT S.A.,

*Plaintiff-Appellant,*

-v.-

REPUBLIC OF THE CONGO AND CAISSE CONGOLAISE D'AMORTISSEMENT,

*Defendants-Appellees.*

◆

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

◆

### BRIEF OF APPELLANT

Jack Landman Goldsmith, III
1563 Massachusetts Avenue
Cambridge, MA 02138
(617) 384-8159

Francis A. Vasquez, Jr.
Jonathan C. Ulrich
Nicolle E. Kownacki
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600
fvasquez@whitecase.com

June 21, 2013

*Counsel for Appellant*
*Commissions Import Export, S.A.*

<u>**CERTIFICATE OF COUNSEL**</u>

**I.    PARTIES AND *AMICI*; DISCLOSURE STATEMENT**

The following parties appeared in the District Court and are parties in this Court:

Commisimpex, a corporation, appeared as the Plaintiff in the District Court and is the Appellant in this appeal. Commisimpex has no parent company, and there is no publicly held corporation owning 10% or more of its common stock.

The Republic of the Congo and Caisse Congolaise D'Amortissement appeared as Defendants in the District Court and are the Appellees in this appeal. Appellees are foreign states within the meaning of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603, and have expressly waived immunity in these proceedings.

No intervenors or *amici curiae* have appeared before the District Court or this Court.

**II.    RULINGS UNDER REVIEW**

The ruling under review is the District Court's denial of Commisimpex's motion for summary judgment to confirm a foreign court judgment rendered in London, England, and the dismissal of Commisimpex's action with prejudice. The ruling is contained in the Memorandum Opinion and Order entered on January 8,

2013, by Chief Judge Royce C. Lamberth of the U.S. District Court for the District of Columbia.  The official citation to the Federal Reporter is not yet available.

## III.   RELATED CASES

The case on review has not previously been before this Court or any other court.  There are no related cases currently pending in this Court or in any other court.

Dated:  June 21, 2013                    Respectfully submitted,


                                          /s/ Francis A. Vasquez, Jr.
                                          Francis A. Vasquez, Jr.
                                          Jonathan C. Ulrich
                                          Nicolle E. Kownacki
                                          White & Case LLP
                                          701 Thirteenth Street, NW
                                          Washington, DC 20005-3807
                                          (202) 626-3600
                                          FVasquez@whitecase.com

                                          Jack Landman Goldsmith, III
                                          1563 Massachusetts Avenue
                                          Cambridge, MA 02138
                                          (617) 384-8159

                                          *Counsel for Appellant Commissions*
                                          *Import Export, S.A.*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellant Commissions Import Export, S.A. respectfully requests that oral argument be granted pursuant to Rule 34(a) of the Federal Rules of Appellate Procedure because this appeal presents a question of first impression in this Circuit and involves important, novel, and complex issues related to the relationship between federal arbitration law and state law on the recognition of foreign judgments. Oral argument would significantly assist the Court in deciding the issues in this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF COUNSEL ...................................................................i

      I.      PARTIES AND *AMICI*; DISCLOSURE STATEMENT ......................i

      II.     RULINGS UNDER REVIEW .............................................i

      III.   RELATED CASES ....................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ........................................... iii

TABLE OF AUTHORITIES ................................................................. vii

GLOSSARY...................................................................................... xiii

JURISDICTIONAL STATEMENT .........................................................1

STATEMENT OF THE ISSUE ...............................................................2

STATEMENT OF THE CASE.................................................................2

STATEMENT OF FACTS .....................................................................5

      I.      The Underlying Dispute .........................................................5

      II.     The ICC Arbitration And Award ..........................................6

      III.   Actions To Confirm and Enforce The Award.....................7

             A.     Confirmation Proceedings In France .........................7

             B.     Confirmation Proceedings In England.......................8

SUMMARY OF ARGUMENT ...............................................................10

STANDARD OF REVIEW ...................................................................13

ARGUMENT ...................................................................................14

      I.      THE THREE-YEAR STATUTE OF LIMITATIONS IN
             9 U.S.C. § 207 APPLIES ONLY TO THE
             CONFIRMATION OF FOREIGN ARBITRAL
             AWARDS UNDER CHAPTER 2 OF THE FAA, AND
             HAS NO PREEMPTIVE EFFECT ON LONGER

STATE STATUTES OF LIMITATIONS RELATED TO
STATE ENFORCEMENT OF FOREIGN ARBITRAL
AWARDS ................................................................................14

    A.    The One-Year Statute Of Limitations In Chapter 1
           Of The Federal Arbitration Act, 9 U.S.C. § 9, Does
           Not Preempt Longer State Statutes Of Limitations
           Related To Enforcement Of Domestic Arbitral
           Awards ................................................................................14

    B.    The Three-Year Statute Of Limitations In Chapter
           2 Of The Federal Arbitration Act, 9 U.S.C. § 207,
           Which Was Modeled On Section 9 of Chapter 1,
           Does Not Preempt Longer State Statutes Of
           Limitations Related To Enforcement Of Foreign
           Arbitral Awards ..................................................................20

         1.    The Text Of Section 207 Indicates That It
                 Does Not Preempt State Law ........................................22

         2.    Chapter 2's Historical And Contextual
                 Background Confirms That Section 207
                 Does Not Preempt State Law ........................................24

              a.    The Legislative History Shows That
                      No Preemption Was Intended ..............................24

              b.    The New York Convention Does Not
                      Preempt State Law ...............................................27

         3.    The Non-Exclusivity Of Section 207 Is
                 Entirely Consistent With The Supreme
                 Court's Preemption Principles .....................................29

II.    EVEN IF SECTION 207 ESTABLISHED AN
       EXCLUSIVE FEDERAL STATUTE OF
       LIMITATIONS FOR ENFORCING A FOREIGN
       ARBITRAL AWARD, IT DOES NOT PREEMPT THE
       DISTRICT OF COLUMBIA'S LONGER STATUTE OF

LIMITATIONS FOR ENFORCING A FOREIGN
JUDGMENT ....................................................................33

A.   The Text Of Section 207 Shows That It Does Not
     Preempt The District Of Columbia's Longer
     Statute Of Limitations For Enforcing Foreign
     Judgments Based On Foreign Awards.....................34

B.   The Long Tradition Of State Law Governing The
     Enforcement Of Foreign Judgments Supports The
     Conclusion That Section 207 Does Not Preempt
     The District Of Columbia's Longer Statute Of
     Limitations For Enforcing Foreign Judgments
     Based On Awards........................................................36

C.   Other Courts Have Unanimously Concluded That
     FAA Enforcement Mechanisms Are Separate
     From And Do Not Preempt State Laws Governing
     The Enforcement Of Foreign Judgments.................39

D.   Plaintiff's Attempt To Enforce The English
     Judgment Under The D.C. Recognition Act Did
     Not Exploit A "Loophole" In Chapter 2 Of The
     FAA, But Rather Pursued A Lawful, Parallel And
     In Many Respects More Burdensome Enforcement
     Regime .......................................................................43

III.   THE DISTRICT COURT'S HOLDING PRODUCES
       ANOMALOUS CONSEQUENCES THAT ARE
       CONTRARY TO FEDERAL ARBITRATION POLICY.................45

CONCLUSION ........................................................................49

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ......................50

CERTIFICATE OF SERVICE .........................................................51

ADDENDUM OF STATUTES AND REGULATIONS .........................52

# TABLE OF AUTHORITIES

FEDERAL CASES                                                    Page(s)

*Aetna Life Ins. Co. v. Tremblay*, 223 U.S. 185 (1912) .............................................36

*Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995) .................................16

*Arizona v. United States*, 567 U.S. __, 132 S. Ct. 2492 (2012)........................32, 35

*AT&T Mobility, Inc. v. Concepcion*, 131 S. Ct. 1740 (2011) ......................15, 16, 47

*Banque Libanaise Pour Le Commerce v. Khreich*,
    915 F.2d 1000 (5th Cir. 1990) ...............................................................37

*Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*,
    117 F.3d 655 (2d Cir. 1997) ...................................................................48

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001)........................................16

*Comm'ns Imp. Exp. S.A. v. Republic of the Congo*, 11–cv–6176,
    2012 WL 1468486 (S.D.N.Y. Apr. 27, 2012) ...................................... 2-3

*Commc'ns Workers of Am. v. Am. Tel. & Tel. Co.*,
    10 F.3d 887 (D.C. Cir. 1993) .................................................................20

\* *Continental Transfer Technique, Ltd. v. Fed. Gov't of Nigeria*,
    800 F. Supp. 2d 161 (D.D.C. 2011)........................................................41

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000)..........................32, 35

*Dean Witter Reynolds Inc. v. Byrd*, 470 U. S. 213 (1985)......................................15

*Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681 (1996)......................................16

*Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)......................................................36, 37

*First Inv. Corp. v. Fujian Mawei Shipbuilding, Ltd.*,
    703 F.3d 742 (5th Cir. 2013) ..................................................................41

*First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba*,
    462 U.S. 611 (1983)................................................................................38

*Fotochrome, Inc. v. Copal Co.*, 517 F.2d 512 (2d Cir. 1975) .......................... 40-41

Page(s)

*Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) ...........................................16

\* *Hall St. Assocs. LLC v. Mattel, Inc.*, 552 U.S. 576 (2008) .......................... 15-16, 17

*Hilton v. Guyot,* 159 U.S. 113 (1895) ......................................................36

*Hines v. Davidowitz*, 312 U.S. 52 (1941) ..............................................35

\* *In re Consol. Rail Corp.*, 867 F. Supp. 25 (D.D.C. 1994)..........................18, 19, 23

*Indep. Bankers Ass'n of Am. v. Farm Credit Admin.*,
   164 F.3d 661 (D.C. Cir. 1999)..........................................................13

\* *Island Territory of Curacao v. Solitron Devices, Inc.*,
   489 F.2d 1313 (2d Cir. 1973) .....................................................39, 40, 41

*Kentucky River Mills v. Jackson*, 206 F.2d 111 (6th Cir. 1953)......................19, 23

*Lander Co. v. MMP Invs., Inc.*, 107 F.3d 476 (7th Cir. 1997) ..............................28

*Marmet Health Care Ctr., Inc. v. Brown*,
   132 S. Ct. 1201 (2012)....................................................................16

*Maryland v. Louisiana*, 451 U.S. 725 (1981) ........................................31

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
   514 U.S. 52 (1995)........................................................................16

*Matter of Arbitration Between Chromalloy Aeroservices and Egypt*,
   939 F. Supp. 907 (D.D.C. 1996)..........................................................28

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985)............................................................... 15, 30-31

*New England Energy Inc. v. Keystone Shipping Co.*,
   855 F.2d 1 (1st Cir. 1998)..............................................................30

*Nitro-Lift Techs., LLC v. Howard*, 133 S. Ct. 500 (2012).......................................16

*Ocean Warehousing B.V. v. Baron Metals and Alloys, Inc.*,
   157 F. Supp. 2d 245 (S.D.N.Y. 2001) .........................................41, 42

Page(s)

*Oriental Commercial & Shipping Co. v. Rosseel, N.V.*,
  769 F. Supp. 514 (S.D.N.Y. 1991) ................................................ 41-42

*Perry v. Thomas*, 482 U.S. 483 (1987) ................................................ 16

*Photopaint Techs., LLC v. Smartlens Corp.*, 335 F.3d 152 (2d
  Cir. 2003) ........................................................................................ 19, 23

*Preston v. Ferrer*, 552 U.S. 346 (2008) ................................................ 16

*Savage v. Jones*, 225 U.S. 501 (1912) ................................................ 32

*Scherk v. Alberto-Culver Co.*, 417 U. S. 506 (1974) .......................... 15

* *Seetransport Wiking Trader Schiffahrtsgesellschaft MBH & Co. v.
  Navimpex Centrala Navala*, 29 F.3d 79 (2d Cir. 1994)..................34, 42

*Society of Lloyd's v. Siemon-Netto*,
  457 F.3d 94 (D.C. Cir. 2006)............................................................38

*Southland Corp. v. Keating*, 465 U.S. 1 (1984)..................................16

*Sverdrup Corp. v. WHC Constructors, Inc.*,
  989 F.2d 148 (4th Cir. 1993) ........................................................19, 20

*Termorio S.A. E.S.P. v. Electranta S.P.*,
  487 F.3d 928 (D.C. Cir. 2007)........................................................ 47-48

*Val-U Constr. Co. v. Rosebud Sioux Tribe*,
  146 F.3d 573 (8th Cir. 1998) ..........................................................19

*Victrix Steamship Co. v. Salen Dry Cargo A.B.*,
  825 F.2d 709 (2d Cir. 1987) .............................................................40

* *Volt Info. Sciences, Inc. v. Bd. of Trs. Of Leland Stanford Jr. Univ.*,
  489 U.S. 468 (1989).......................................................................17, 32

*Waterview Mgmt. Co. v. F.D.I.C.*, 105 F.3d 696 (D.C. Cir. 1997) .......13

*Wyeth v. Levine*, 555 U.S. 555 (2009) ..............................................31, 38

Page(s)

STATE CASES

*Bolton v. Bernabei & Katz*, 954 A.2d 953 (D.C. 2008)...........................17

*Gilbert v. Burnstine*, 174 N.E. 706 (N.Y. 1931)........................................22

*H.S. Cramer & Co. v. Washburn-Wilson Seed Co.*,
    233 P.2d 809 (Idaho 1951) ....................................................22

*Johnston v. Compagnie Generale Transatlantique*,
    152 N.E. 121 (N.Y. 1926) ....................................................36


FEDERAL STATUTES AND RULES

\* 9 U.S.C. § 9................................... 11, 14, 15, 16, 18, 19, 20, 22, 23, 25, 40

9 U.S.C. § 10..............................................................................15, 16

9 U.S.C. § 11..............................................................................15, 16

9 U.S.C. § 201 ............................................................................3, 20, 28

9 U.S.C. § 203..................................................................................25

9 U.S.C. § 205..................................................................................25

\* 9 U.S.C. § 207..................... 2, 4, 10, 11, 12, 14, 20, 21, 22, 23, 24, 25, 27, 29, 30,
    31, 32, 33, 34, 35, 36, 39, 41, 42, 43, 44, 45, 46, 47

9 U.S.C. § 208..................................................................................21

28 U.S.C. § 1291................................................................................1

28 U.S.C. § 1330 ...............................................................................1

28 U.S.C. §§ 1602 *et seq.*................................................................1, 3, 38

Fed. R. App. P. 4(a)(1) .......................................................................1

Page(s)

## D.C. STATUTES

D.C. Code § 15-361 *et seq.* ...................................... 1, 2, 3, 4, 38, 41, 43, 44, 48, 49

D.C. Code §§ 16-4401 *et seq.* ...........................................................................17, 18


## OTHER AUTHORITIES

1958 Report of the U.S. Delegation to the United Nations
  Conference on International Commercial Arbitration,
  9 Am. Int'l Rev. Arb. 91, 115-16 (2008) ...........................................................24

1 Gary B. Born, International Commercial Arbitration 143 (2009) ........... 26, 27-28

Stephen B. Burbank, *A Tea Party at the Hague?*,
  18 Sw. J. Int'l L. 629 (2012) .............................................................................37

Robert C. Casad, *Issue Preclusion and Foreign Country
  Judgments: Whose Law?*, 70 Iowa L. Rev. 53 (1984) ......................................37

Convention on the Recognition and Enforcement of Foreign
  Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, T.I.A.S.
  No. 6997 (New York Convention) ...................................... 3, 4, 8, 9, 13, 20, 24,
                                                                          25, 27, 28, 30, 32, 36,
                                                                          39, 40, 41, 42, 44, 47, 48

Hague Convention on Private International Law, Convention on
  Choice of Court Agreements, June 30, 2005,
  44 I.L.M. 1294 (2005) ............................................................................... 37-38

H.R. Rep. No. 91-1181 (1970) .....................................................................14, 22

Testimony of Richard D. Kearney before the Senate Foreign
  Relations Committee, S. Exec. Rep. No. 90-10 (1968) ....................................25

Andreas Lowenfeld, *Nationalizing International Law: Essay in Honor
  of Louis Henkin*, 36 Colum. J. Transnat'l L. 121 (1997) ..................................37

Page(s)

Kurt H. Nadelmann, *Ignored State Interests: The Federal Government and International Efforts to Unify Rules of Private Law*, 102 U. Pa. L. Rev. 323 (1954) ......................................37

Dirk Otto, *Article VII*, *in* Recognition and Enforcement of Foreign Arbitral Awards: A Global Commentary on the New York Convention 443 (H. Kronke et al. eds., 2010) ................................27

Restatement (Second) of Conflict of Laws § 98 (1988) ........................................38

Restatement (Third) of Foreign Relations § 481 (1987) ..................................36, 38

1 Roth et al., Alternative Dispute Resolution Practice Guide § 2:11 (2012) .........................................................................17

S. Rep. No. 91-702 (1970)................................................................ 22, 25-26

Eugene F. Scoles, *Interstate and International Distinctions in Conflict of Laws in the United States*, 54 Cal. L. Rev. 1599 (1966) ..............................................................................37

Unif. Arbitration Act § 22 (revised 2000), 7 U.L.A. 76 (2009) ...........................18

Albert J. van den Berg, *The New York Convention of 1958: An Overview*, *in* Enforcement of Arbitration Agreements and International Arbitral Awards—The New York Convention in Practice 39 (Emmanuel Gaillard & Domenico Di Pietro eds., 2008) .........................................................................27

George K. Walker, *Trends in State Legislation Governing International Arbitrations*, 17 N.C. J. Int'l L. & Com. Reg. 419 (1992) ..............................................................................27

William J. Woodward, Jr., *Saving the Hague Choice of Court Convention*, 29 U. Pa. J. Int'l L. 657 (2008) ......................................37

*Authorities upon which Appellant chiefly relies are marked with asterisks.*

# **GLOSSARY**

In accordance with D.C. Circuit Rule 28(a)(3), the abbreviations and acronyms used herein are defined as follows:

| | |
|---|---|
| Award | December 3, 2000 International Court of Arbitration Award |
| CCA | Defendant-Appellee Caisse Congolaise D'Amortissement |
| CFA | Communauté Financière Africaine Francs, the currency of the Congo |
| Commisimpex | Plaintiff-Appellant Commissions Import Export, S.A. |
| The Congo | Defendant-Appellee Republic of the Congo |
| D.C. Recognition Act | District of Columbia Uniform Foreign-Country Money Judgment Recognition Act, D.C. Code §§ 15-361 *et seq*. |
| Defs.' Stmt. | Defendants' Response and Supplement to Plaintiff's Statement of Material Facts as to Which There Is No Genuine Issue |
| English Court | Queen's Bench Division of the High Court of Justice, Commercial Court in London, England |
| English Judgment | July 10, 2009 Order of the English Court |
| FAA | Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq*. |
| FSIA | Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602-11 |
| Higham Decl. | Motion for Summary Judgment, Declaration of John A. Higham |

| | |
|---|---|
| ICC | International Chamber of Commerce |
| JA | Joint Appendix |
| New York Convention | Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997 (1958) |
| Pl.'s Stmt. | Statement of Material Facts as to Which There Is No Genuine Issue In Support of Commisimpex's Motion for Summary Judgment |
| Polkinghorne English Decl. | Declaration of Michael A. Polkinghorne in English Proceedings (Motion for Summary Judgment, Declaration of Michael A. Polkinghorne, Ex. 1) |

# JURISDICTIONAL STATEMENT

The cause of action in this case arises under the District of Columbia Uniform Foreign-Country Money Judgment Recognition Act of 2011 ("D.C. Recognition Act"), D.C. Code § 15-361, *et seq*. The District Court for the District of Columbia had subject-matter jurisdiction over this action pursuant to the U.S. Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330 and 1602-11. The Republic of the Congo ("the Congo") is a foreign state, and Caisse Congolaise D'Amortissement ("CCA") is an agency or instrumentality of a foreign state, pursuant to 28 U.S.C. § 1603. The District Court ruled that the Congo and CCA had expressly waived their immunity pursuant to 28 U.S.C. § 1605(a)(1), as conceded by the Congo and CCA. Mem. Op. at 5 [JA-___].

This Court has appellate jurisdiction under 28 U.S.C. § 1291. In an Order dated January 8, 2013, the District Court denied Commisimpex's motion for summary judgment and dismissed all claims against the Congo and CCA with prejudice. This Order was a final order disposing of all of Commisimpex's claims. Commisimpex filed a timely notice of appeal on January 11, 2013, pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A).

## STATEMENT OF THE ISSUE

Whether the three-year statute of limitations that governs confirmation of a foreign arbitral award under 9 U.S.C. § 207 preempts the longer statute of limitations that governs enforcement of a foreign judgment based on a foreign arbitral award under the District of Columbia's Uniform Foreign-Country Money Judgments Recognition Act, D.C. Code § 15-369.[1]

## STATEMENT OF THE CASE

This case arises from the Congo and CCA's refusal to make payment of vast sums of money owed to Commisimpex under an English court judgment ("English Judgment") to recognize and enforce a December 2000 arbitral award ("Award") that was issued in France under the auspices of the International Court of Arbitration of the International Chamber of Commerce.  The Award was also recognized by a French court in December 2000 and reconfirmed in May 2002.

On September 2, 2011, Commisimpex filed a Complaint in the U.S. District Court for the Southern District of New York to recognize and enforce the English Judgment, which was rendered by the Queen's Bench Division of the High Court of Justice, Commercial Court in London, England ("English Court").  Compl. dated Sept. 2, 2011 [JA-___].  The New York court transferred venue to the District Court for the District of Columbia on April 27, 2012.  *Comm'ns Imp. Exp.*

---

[1] In accordance with D.C. Circuit Rule 28(a)(5), all pertinent statutes and regulations are set forth in an addendum to this brief.

–2–

*S.A. v. Republic of the Congo*, 11–cv–6176, 2012 WL 1468486, at *1 (S.D.N.Y. Apr. 27, 2012) [JA-___].  On June 22, 2012, Commisimpex filed an amended and supplemental complaint in the District Court seeking recognition of the English Judgment under the D.C. Recognition Act, D.C. Code § 15-369.

Commisimpex filed a motion for summary judgment on July 30, 2012, to recognize and enforce the English Judgment.  The Congo and CCA conceded in their response that they had expressly waived their sovereign immunity in these proceedings, that the District Court thus had jurisdiction to adjudicate Commisimpex's cause of action, and that the motion did not raise any genuine issue of material fact that would preclude a summary judgment ruling.  However, the Congo and CCA argued that recognition of the English Judgment under the D.C. Recognition Act was preempted by Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201 *et seq*., which implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997 ("New York Convention"), and governs the enforcement of foreign arbitral awards in U.S. courts.

In an Order dated January 8, 2013 [JA-___], the District Court denied Commisimpex's motion for summary judgment and dismissed with prejudice the claims against the Congo and CCA.  The District Court found that it had subject-matter jurisdiction pursuant to 28 U.S.C. § 1605(a)(1) owing to the Congo and

CCA's express waivers of immunity. Mem. Op. at 5 [JA-___]. However, on an issue of first impression in this Circuit, the District Court held that the three-year statute of limitations for confirmation actions for foreign arbitral awards under FAA Chapter 2, 9 U.S.C. § 207, preempts the D.C. Recognition Act to the extent that it permits enforcement of a foreign judgment based on a foreign arbitral award issued more than three years earlier. Mem. Op. at 1 [JA-___].

In the view of the District Court, Commisimpex had "uncovered a procedural loophole in Chapter 2" of the FAA. *Id.* The District Court asserted that, in enacting Chapter 2, "Congress ensured that the enforcement of foreign arbitral awards in the United States would be governed by one set of uniform 'rules of procedure,' rather than a diversity of state ones as might have occurred pursuant to Article XI [of the New York Convention]." *Id.* at 9 [JA-___]. The District Court held that the three-year statute of limitations was one of the rules of procedure made uniform and exclusively federal by Chapter 2. *Id.* at 10-11 [JA-___]. It ruled that allowing recourse to state law to enforce foreign judgments based on foreign arbitral awards outside of the three-year limit would frustrate Congress's uniformity objective and its aim of achieving finality and repose for defendants. *Id.* at 11-12 [JA-___].

## STATEMENT OF FACTS

The factual record is not in dispute.  Defendants have conceded that they failed to satisfy the English Judgment and the underlying Award.  The history of the Award and related proceedings is set forth below.

## I.    THE UNDERLYING DISPUTE

In the 1980s, Commisimpex entered into a number of contracts with the Congo, pursuant to which the company agreed to perform certain public works and to supply certain materials to the Congo.  Mem. Op. at 2 [JA-___]; Decl. of Michael Polkinghorne in English Proceedings (Mot. for Summary Judgment, Decl. of Michael A. Polkinghorne, Ex. 1) ("Polkinghorne English Decl.") ¶ 6 [JA-___]; Plaintiff's Statement of Material Facts ("Pl.'s Stmt.") ¶ 2 [JA-___].  In 1992, Commisimpex and the Congo concluded an agreement, Protocole d'Accord No. 566, for the repayment of certain outstanding debts owed to Commisimpex under the contracts.  Mem. Op. at 2 [JA-___]; Polkinghorne English Decl. ¶ 8 [JA-___]; Pl.'s Stmt. ¶ 3 [JA-___].  Pursuant to the 1992 agreement, CCA drew up promissory notes endorsed in favor of Commisimpex, and the Congo issued a series of commitment letters.  In those letters, the Congo agreed to submit disputes arising under the notes to arbitration in Paris, France, under the arbitration rules of the International Chamber of Commerce ("ICC"), and to waive immunity for all related proceedings.  Mem. Op. at 2 [JA-___]; Polkinghorne English Decl. ¶ 12

[JA- ___]; Pl.'s Stmt. ¶¶ 5-6 [JA-___]; Defendants' Response and Supplement to Plaintiff's Statement of Material Facts ("Defs.' Stmt.) ¶¶ 5-6 [JA-___].

The Congo and CCA failed to pay the amounts under the promissory notes as they came due.  Mem. Op. at 2 [JA-___]; Polkinghorne English Decl. ¶ 14 [JA-___]; Pl.'s Stmt. ¶ 7 [JA-___]; Defs.' Stmt. ¶ 7 [JA-___].  Commisimpex issued a formal demand for payment, to which the Congo and CCA did not respond. Polkinghorne English Decl. ¶ 15 [JA-___]; Pl.'s Stmt. ¶ 7 [JA-___].

## II.    THE ICC ARBITRATION AND AWARD

Following the Congo and CCA's failure to respond to Commisimpex's formal demand for payment, on March 13, 1998, Commisimpex filed a request for arbitration with the International Court of Arbitration of the ICC, pursuant to the arbitration agreements contained in the Protocole d'Accord.  Polkinghorne English Decl. ¶ 15 [JA-___]; Pl.'s Stmt. ¶ 8 [JA-___].  The arbitration proceedings took place in Paris, France, and were governed by French law.  Polkinghorne English Decl. ¶ 15 [JA-___]; Pl.'s Stmt. ¶ 8 [JA-___].  Both the Congo and CCA defended against the arbitration, and were represented throughout the proceedings by experienced legal counsel.  Mem. Op. at 2 [JA-___]; Polkinghorne English Decl. ¶ 16 [JA-___]; Pl.'s Stmt. ¶ 8 [JA-___].

At the conclusion of the proceedings, the ICC arbitral tribunal rendered a final arbitral award in Commisimpex's favor on December 3, 2000, finding the

Congo and CCA jointly and severally liable.  *See* Award (Am. Compl., Ex. A) [JA-___]; *see also* Mem. Op. at 2 [JA-___].  The tribunal awarded Commisimpex the following amounts in Euros, Pounds Sterling, U.S. Dollars, and Communauté Financière Africaine Francs ("CFA," the currency of the Congo): €4,094,531; £18,903,708; US$31,184,837; and CFA 1,731,267,415.   Award (Am. Compl., Ex. A) at 67-68 [JA-___].  The tribunal also ordered Congo and CCA to pay penalty interest and Commisimpex's arbitration costs.  *Id.* at 68-70 [JA-___].

The Congo and CCA failed to pay Commisimpex the amounts owed under the Award.  Mem. Op. at 3 [JA-___]; Polkinghorne English Decl. ¶ 25 [JA-___]; Pl.'s Stmt. ¶ 12 [JA-___]; Defs.' Stmt. ¶ 12 [JA-___].

## III.   ACTIONS TO CONFIRM AND ENFORCE THE AWARD

### A.   Confirmation Proceedings In France

In an effort to enforce the Award that the Congo and CCA refused to pay, Commisimpex first initiated proceedings in France, the seat of arbitration, before the Tribunal de Grande Instance of Paris.  The Award was granted "exequatur" by the Tribunal de Grande Instance on December 12, 2000, the French procedural equivalent of recognition proceedings in our courts, following which the Award became fully enforceable in France.  Polkinghorne English Decl. ¶¶ 26, 29 [JA-___].  On January 2, 2001, the Congo and CCA initiated proceedings in the Court of Appeal of Paris to vacate the Award.  *Id.* ¶ 27 [JA-___].  On May 23, 2002, the

Court of Appeal issued a judgment denying the request for annulment, and re-confirming enforceability of the Award.  *Id.*; s*ee also* French Judgment dated May 23, 2002 (Mot. for Summary Judgment, Decl. of Michael A. Polkinghorne, Ex. 2) at 427 (translation at 434) [JA-___].  The Congo and CCA failed to satisfy their obligations to Commisimpex under the French judgment.  The French judgment remains enforceable in France until June 19, 2018.  Polkinghorne English Decl. ¶ 29 [JA-___].

### B.    Confirmation Proceedings In England

Although Commisimpex made efforts to resolve this matter without further legal action and the Congo and CCA agreed to pay, they subsequently refused.  *See* Polkinghorne English Decl. ¶ 31 [JA-___] (discussing the Congo's acknowledgement of its continued debts to Claimant).  Commisimpex subsequently made dozens of unsuccessful attempts to collect on its Award.  *See* Commisimpex's Objections and Answers to Defendants' First Set of Interrogatories and Requests for Production, Ex. 1 (Opposition to Mot. for Summary Judgment, Declaration of Boaz S. Morag, Ex. C) [JA-___].  As part of those efforts, on June 17, 2009, Commisimpex initiated proceedings against the Congo and CCA before the English Court to enforce the Award pursuant to the New York Convention and the 1996 Arbitration Act of England.  Mem. Op. at 3 [JA-___]; Mot. for Summary Judgment, Decl. of John A. Higham ("Higham

–8–

Decl.") ¶¶ 1-4 [JA-___]; Pl.'s Stmt. ¶ 13 [JA-___]; *see also* Claim Form in English Proceedings (Higham Decl., Ex. 1) [JA-___].

On July 10, 2009 the English Court entered a Judgment enforcing the Award, and recalculated the amount of the award to include additional interest and other costs. *See* English Judgment (Am. Compl., Ex. B) [JA-___]; *see also* Mem. Op. at 3 [JA-___]; Higham Decl. ¶ 7 [JA-___]; Pl.'s Stmt. ¶ 14 [JA-___]; Defs.' Stmt. ¶ 14 [JA-___]. The English Judgment awarded Commisimpex the following amounts in Euros, Pounds Sterling, U.S. Dollars, and CFAs: €4,094,531; £18,903,708; US$31,184,837; and CFA 1,731,267,415. English Judgment (Am. Compl., Ex. B) at 1-2 [JA-___]. The English Judgment also ordered payment of accrued interest calculated in the following amounts: €8,300,622; £34,312,232; US$56,408,208; and CFA 2,899,457,582. English Judgment (Am. Compl., Ex. B) at 2 [JA-___]. The Judgment further ordered the Congo and CCA to pay arbitration costs of US$393,333 and €22,867. *Id.*

The English enforcement proceeding complied fully with English substantive and procedural law, consistent with the requirements of due process and the New York Convention. Higham Decl. ¶ 18 [JA-___] and Ex. 1 [JA-___]; Pl.'s Stmt. ¶ 19 [JA-___].

On November 1, 2011, the English Judgment was amended and reduced to account for a successful seizure of assets that, by its terms, was to be deducted

from the Award.  Mem. Op. at 3 [JA-___]; Higham Decl. ¶ 15; Pl.'s Stmt. ¶ 21 [JA-___]; *see also* Amended English Judgment dated Nov. 1, 2011 (Am. Compl., Ex. C) [JA-___].

Under English law, an English court judgment remains enforceable for six years.  Higham Decl. ¶ 17 [JA-___]; Pl.'s Stmt. ¶ 23 [JA-___].  The English Judgment, as amended, remains in full force and effect, and may be enforced in other jurisdictions.  Higham Decl. ¶ 17 [JA-___]; Pl.'s Stmt. ¶ 23 [JA-___]. The Congo and CCA have failed to satisfy their obligations to Commisimpex under the English Judgment.

## SUMMARY OF ARGUMENT

Ignoring the text and historical background of Chapter 2 of the FAA, the District Court ruled on the basis of the "purposes implicit in the statutory scheme" (Mem. Op. at 10 [JA-___]) that Congress intended the enforcement of foreign arbitral awards in the United States to be governed exclusively by uniform federal procedures, including a uniform three-year statute of limitations under Section 207. Based on this faulty premise about the statute of limitations for enforcement of a foreign arbitral ***award***, the District Court concluded that the District of Columbia's longer statute of limitations for enforcement of a foreign court ***judgment*** based on an arbitral award stood as an obstacle to federal uniformity under FAA Chapter 2,

and is preempted.  The District Court erred as a matter of law and its decision should be reversed, for three reasons.

First, Chapter 2 of the FAA does not establish uniform and exclusive procedures related to arbitration, and therefore was not intended to preempt state law.  The statute of limitations in Section 207 applies ***only*** to award confirmation proceedings brought under Chapter 2, and does not have any preemptive effect on state procedures related to confirmation of foreign arbitral awards.  It is well established that the statute of limitations in Chapter 1 of the FAA, 9 U.S.C. § 9, does not preempt longer state statutes of limitations related to enforcement of arbitral awards.  Section 207 was modeled on Section 9, and its text and historical and contextual background demonstrate that, like Section 9, it does not preempt a longer state statute of limitations.  This conclusion is entirely consistent with the Supreme Court's preemption rulings in the field of arbitration, which establish that the FAA preempts only those state laws that are more burdensome to arbitration, and not those laws that further facilitate arbitration and award enforcement.  It is also compelled by the presumption against preemption, since the enforcement of foreign arbitral awards was a traditional state prerogative that the drafters of Section 207 were overtly keen to preserve.   Because the statute of limitations in Section 207 only applies to confirmation proceedings for foreign awards in federal

court, it therefore cannot preempt state law procedures for the enforcement of a foreign court judgment based on an arbitral award.

Second, and independent of the foregoing, Section 207 of the FAA does not preempt a longer state-law statute of limitations governing enforcement of ***foreign judgments*** based on arbitral awards. The plain text of Section 207 makes clear that it is limited to the enforcement of arbitral awards, not judgments, and several decisions have so held. Moreover, the enforcement of foreign judgments has long been governed by state law and protected against federal intrusion via the treaty power and implementing legislation. The presumption against preemption of settled state control over foreign judgments by a federal statute concerning arbitral confirmation thus has special force in this context. Far from being overcome by any indication in Section 207, this presumption is confirmed by its text and structure, and by prevailing case law.

Third, the District Court's decision, if permitted to stand, would portend a dramatic reorientation of the federal-state balance related to arbitration and judgment enforcement, and would produce results that are in fact contrary to federal arbitration policy. Negative implications of the decision include that FAA Chapter 2 would preempt every procedural element of state international arbitration law, and any element of state judgments law that is more permissive than the FAA. The District Court ruling also introduces anomalies between the

treatment of New York Convention and non-New York Convention awards, and between foreign judgments based on awards and those that are not. Ultimately, the FAA's fundamental policies concerning the enforcement of arbitration agreements and the promotion of international dispute resolution are best served by enforcement of the English Judgment, and the curtailment of the Defendants' longstanding efforts to evade their obligations.

## STANDARD OF REVIEW

The District Court erred as a matter of law. Its denial, on federal preemption grounds, of Commisimpex's motion for summary judgment to enforce the English Judgment is subject to *de novo* review. *See, e.g.*, *Indep. Bankers Ass'n of Am. v. Farm Credit Admin.*, 164 F.3d 661, 666 (D.C. Cir. 1999) ("This court reviews *de novo* the district court's grant and denial of the parties' motions for summary judgment."); *Waterview Mgmt. Co. v. F.D.I.C.*, 105 F.3d 696, 699 (D.C. Cir. 1997) (reviewing *de novo* dismissal of complaint on federal preemption grounds).

## ARGUMENT

**I. THE THREE-YEAR STATUTE OF LIMITATIONS IN 9 U.S.C. § 207 APPLIES ONLY TO THE CONFIRMATION OF FOREIGN ARBITRAL AWARDS UNDER CHAPTER 2 OF THE FAA, AND HAS NO PREEMPTIVE EFFECT ON LONGER STATE STATUTES OF LIMITATIONS RELATED TO STATE ENFORCEMENT OF FOREIGN ARBITRAL AWARDS**

The statute of limitations in Section 207 of Chapter 2 of the FAA is modeled on the statute of limitations in Section 9 of Chapter 1 of the FAA. *See* H.R. Rep. No. 91-1181, at 3604 (1970). Courts have unanimously concluded that Section 9's statute of limitations applies only to the enforcement of arbitral awards under Chapter 1, and has no preemptive effect on the enforcement of awards pursuant to state law mechanisms, including state laws that permit longer periods to confirm an arbitral award. The plain text of Section 207, its contextual and historical background, and established preemption principles show that same conclusion follows for the structurally identical statute of limitations in Section 207 with respect to enforcement of awards under Chapter 2.

**A. The One-Year Statute Of Limitations In Chapter 1 Of The Federal Arbitration Act, 9 U.S.C. § 9, Does Not Preempt Longer State Statutes Of Limitations Related To Enforcement Of Domestic Arbitral Awards**

Prior to enactment of the FAA in 1925, the common law permitted judicial enforcement of arbitral awards. The common law imposed high hurdles to enforcement, however, including close scrutiny of the arbitrators' rulings and "an

–14–

anachronistic judicial hostility to agreements to arbitrate, which American courts had borrowed from English common law." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 n.14 (1985) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U. S. 213, 219-21 & n.6 (1985); *Scherk v. Alberto-Culver Co.*, 417 U. S. 506, 510 & n.4 (1974)).  Congress enacted Chapter 1 of the FAA to eliminate this longstanding hostility to arbitration.  *See, e.g.*, *Scherk*, 417 U.S. at 510-11; *see also AT&T Mobility, Inc. v. Concepcion*, 131 S. Ct. 1740, 1749 (2011) (noting FAA was "designed to promote arbitration").

Section 9 of the FAA provides:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at ***any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award***, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9 (emphasis added).  Under Section 9, judges must confirm an award sought within one year after it is made, unless one of the relatively narrow grounds for vacating or modifying an award under Sections 10 and 11 applies.  Taken together, Sections 9 through 11 of Chapter 1 embody a relatively streamlined, arbitration friendly confirmation process with fewer procedural and substantive hurdles to the enforcement of an award than prevailed at common law.  *See Hall St. Assocs. LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) ("The Act also supplies

–15–

mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it.  §§ 9-11.  An application for any of these orders will get streamlined treatment as a motion, obviating the separate contract action that would usually be necessary to enforce or tinker with an arbitral award in court.").

The Supreme Court has ruled that Sections 9-11 and other provisions of the FAA preempt certain state laws that unduly **burden** arbitration.[2]  But the Court also

---

[2] *See Nitro-Lift Techs., LLC v. Howard*, 133 S. Ct. 500, 503 (2012) (per curiam) (FAA preempts state law scheme permitting State Supreme Court to "assume[] the arbitrator's role" in determining validity of contractual term in agreement containing arbitration clause); *Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201 (2012) (per curiam) (FAA preempts state law prohibiting pre-dispute arbitration agreements for personal injury and wrongful death claims); *Concepcion*, 131 S. Ct. 1740 (FAA preempts California's judicial rule finding class arbitration waivers in consumer contracts unconscionable); *Preston v. Ferrer*, 552 U.S. 346 (2008) (FAA preempts state rule requiring exhaustion of administrative remedies before arbitration); *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) (plurality opinion) (FAA preempts state law scheme allowing trial court to determine availability of class action under arbitration agreement); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) (FAA preempts state employment law restricting ability of non-transportation employees and employers to enter into arbitration agreement); *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681 (1996) (FAA preempts state law conditioning enforceability of arbitration clause on compliance with special notice requirements); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995) (FAA preempts state law prohibiting arbitrators, but not courts, from awarding punitive damages); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995) (FAA preempts state statute making written, pre-dispute arbitration agreements invalid and unenforceable); *Perry v. Thomas*, 482 U.S. 483 (1987) (FAA preempts state law requiring that litigants be provided a judicial forum for wage disputes); *Southland Corp. v. Keating*, 465 U.S. 1 (1984) (FAA preempts state law prohibiting arbitration of claims brought under state financial investment statute).

has made clear that the FAA does not generally preempt state arbitration laws. *See, e.g.*, *Volt Info. Sciences, Inc. v. Bd. of Trs. Of Leland Stanford Jr. Univ.*, 489 U.S. 468, 477 (1989) ("The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration."). Thus, it is well established that Chapter 1 does not preempt alternative state statutory or common law procedures for enforcing an arbitral award. *See, e.g.*, *Hall St. Assocs.*, 552 U.S. at 590 (Chapter 1 of the FAA "is not the only way into court for parties wanting review of arbitration awards: they may contemplate enforcement under state statutory or common law[.]").

Indeed, since enactment of the FAA, every state and the District of Columbia have enacted statutes that govern the enforcement of arbitral awards. *See* 1 Roth et al., Alternative Dispute Resolution Practice Guide § 2:11 (2012). The District of Columbia statute, like many others, is based on the model of the Revised Uniform Arbitration Act.  *See* D.C. Revised Uniform Arbitration Act, D.C. Code §§ 16-4401 *et seq.*; *see also Bolton v. Bernabei & Katz*, 954 A.2d 953, 957 n.1 (D.C. 2008) ("The [D.C. Uniform Arbitration Act] has been repealed effective July 1, 2009, and [is] replaced by the Revised Uniform Arbitration Act, codified at D.C. Code §§ 16-4401 to -4432.").  The District of Columbia statute's arbitral confirmation mechanisms depart in some respects from Chapter 1 of the

FAA.[3]   One salient difference between the two laws is that the District of Columbia law does not provide a one-year limitations period for confirming an arbitral award.   *See* D.C. Code § 16-4422 ("After a party to an arbitration proceeding receives notice of an award, the party may make a motion to the court for an order confirming the award . . . ."); *see also In re Consol. Rail Corp.*, 867 F. Supp. 25, 32 (D.D.C. 1994) (noting that the D.C. Arbitration Act "does not contain an explicit statute of limitations for actions to confirm arbitration awards," and holding that the District's general three-year limitations period applies to the Act); Unif. Arbitration Act § 22 cmt. 2 (revised 2000), 7 U.L.A. 76 (2009) (noting that Drafting Committee "considered but rejected the language in FAA Section 9 that limits a motion to confirm an award to a one-year period of time," and concluded instead that "the general statute of limitations in a State for the filing and execution on a judgment should apply").

Federal courts uniformly agree that the one-year statute of limitations in Section 9 applies only to confirmation of awards under the FAA, and does not

---

[3] Under Section 16-4422 of the D.C. Act, a court must confirm an arbitral award unless, among other reasons, it is vacated pursuant to Section 16-4423.   *See* D.C. Code § 16-4422.   Some of the grounds for vacating an award under Section 16-4423 are unavailable in Chapter 1 of the FAA, 9 U.S.C. § 10, including the power to vacate an award in an arbitration conducted without proper notice, D.C. Code § 16-4423(a)(6), and the power to "vacate an award made in the arbitration proceeding on other reasonable ground," *id.* § 16-4423(b).

preempt longer statutes of limitations for confirming an award under state law. As a leading early decision explained, Section 9's "may apply" language indicates that an award holder can seek the FAA's favorable "summary remedy" of confirmation within one year after an award, but "is not limited to such remedy." *Kentucky River Mills v. Jackson*, 206 F.2d 111, 120 (6th Cir. 1953). Rather, as the permissive phrase "may apply" suggests, the pre-existing state common law enforcement action—including its possibly longer statute of limitations—is unaffected by the FAA confirmation procedure, and remains an option for an award holder. *Id.* *See also Photopaint Techs., LLC v. Smartlens Corp.*, 335 F.3d 152, 159-60 (2d Cir. 2003) (reading Section 9 to permit the "benefits of the streamlined summary proceeding" under the FAA "only if" action is brought within one year of the award, but to leave untouched "an action at law [as] an alternative remedy to enforce an arbitral award"); *In re Consol. Rail*, 867 F. Supp. at 30, 32 ("[T]he fact that *confirmation* under § 9 is time-barred does not prevent the party from using another method to enforce the award[;]" because "confirmation under § 9 is not mandatory . . . a party is not prevented from using state law or common law procedures to confirm the award.").[4]

---

[4] Some courts have read Section 9's permissive "may apply" to mean that the one-year in Section 9 is not tantamount to a statute of limitations even in Section 9 confirmation proceedings. *See, e.g.*, *Sverdrup Corp. v. WHC Constructors, Inc.*, 989 F.2d 148, 155 (4th Cir. 1993); *Val-U Constr. Co. v. Rosebud Sioux Tribe*, 146 F.3d 573, 581 (8th Cir. 1998). It follows from these cases as well that Section 9's

Thus, Section 9's relatively short one-year statute of limitations is viewed as a *quid pro quo* for Chapter 1's relatively generous summary confirmation process. But it only applies to Chapter 1 proceedings and does not preempt state arbitral confirmation regimes with different confirmation mechanisms, including ones with a longer statute of limitations. As the decisions interpreting Section 9 demonstrate, an arbitral award holder does not undermine the federal scheme in Chapter 1 by choosing a state law remedy with a longer statute of limitations. Rather, the award holder simply opts for an alternative (and in some respects more burdensome) state-law mechanism that is available as a consequence of the purposefully overlapping system of domestic arbitration awards in the United States.

> **B.     The Three-Year Statute Of Limitations In Chapter 2 Of The Federal Arbitration Act, 9 U.S.C. § 207, Which Was Modeled On Section 9 of Chapter 1, Does Not Preempt Longer State Statutes Of Limitations Related To Enforcement Of Foreign Arbitral Awards**

Chapter 2 of the FAA, 9 U.S.C. § 201 *et seq*., implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997 ("New York Convention"), and governs the

---

one-year proviso has no effect on state law. *See Sverdrup*, 989 F.2d at 155. The D.C. Circuit has stated in dicta, however, that "actions to confirm awards [under Section 9] must be brought within one year." *Commc'ns Workers of Am. v. Am. Tel. & Tel. Co.*, 10 F.3d 887, 891 (D.C. Cir. 1993). As the cases in cited in the text demonstrate, courts that agree that Section 9 imposes a one-year statute of limitations on Chapter 1 confirmation proceedings also maintain that Section 9 applies in federal proceedings only and has no applicability to state confirmation proceedings.

enforcement of foreign arbitral awards in the United States.[5]   Section 207 of Chapter 2 contains a three-year statute of limitations for confirmation of arbitral awards that (except for the different time period) was expressly modeled in language and structure on the statute of limitations in Chapter 1.  The very same principles of construction outlined in Point I.A above that lead to the unquestioned conclusion that Chapter 1's statute of limitations is non-preemptive therefore apply *equally* to Chapter 2's statute of limitations, and thus lead to the same conclusion.

Nonetheless, without any analysis of the text of Chapter 2 of the FAA or its proper background, the District Court concluded that Congress in enacting Chapter 2 "ensured that the enforcement of foreign arbitral awards in the United States would be governed by one set of uniform 'rules of procedure,' rather than a diversity of state ones."  Mem. Op. at 9 [JA-___].  That conclusion was just plain wrong.   The text and structure of Section 207, along with the context of its enactment and established preemption principles, make clear that its statute of limitations applies only to confirmation proceedings under Chapter 2—and in no way preempts longer state statutes of limitations related to the enforcement of foreign arbitral awards.

---

[5] Chapter 1 of the FAA "applies to actions and proceedings brought under [Chapter 2] to the extent that chapter is not in conflict with this chapter or the Convention as ratified by the United States." 9 U.S.C. § 208.  However, Chapter 2 has its own confirmation mechanism and its own statute of limitations, and they control in Chapter 2 cases.

### 1.    The Text Of Section 207 Indicates That It Does Not Preempt State Law

Section 207 contains Chapter's 2's main confirmation mechanism as well as its statute of limitations.  It provides:

> ***Within three years*** after an arbitral award falling under the Convention is made, ***any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award*** as against any other party to the arbitration.  The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C. § 207 (emphasis added).

Just as Section 9 was drafted against the backdrop of state law confirmations of domestic arbitral awards, Section 207 was drafted against the backdrop of state law confirmations of international arbitral awards.  *See, e.g.*, *H.S. Cramer & Co. v. Washburn-Wilson Seed Co.*, 233 P.2d 809, 819 (Idaho 1951); *Gilbert v. Burnstine*, 174 N.E. 706, 709 (N.Y. 1931).  Against this similar background to Section 9, the State Department specifically modeled Section 207 on the confirmation procedures in Section 9, including Chapter 1's statute of limitations.  *See* H.R. Rep. No. 91-1181, at 3603-04 (1970) (transmitting draft legislation from State Department to Congress and characterizing Section 207 as a "similar provision" to Section 9).  To accommodate the realities of international enforcement, the drafters made the limitations period under Section 207 longer than under Section 9.  *See* S. Rep. No. 91-702, at 8 (1970).  But otherwise they adopted the same language and

structure. Thus, both Sections 9 and 207 provide that, within the respective limitations period, "any party to the arbitration may apply" to the referenced court "for an order confirming the award," and both impose a duty to confirm subject to specified exceptions.

The common language and structure in Section 207 and Section 9 compel the conclusion that Section 207's statute of limitations applies *only* to Chapter 2 confirmation processes and does *not* preempt state arbitral confirmation procedures, including a longer statute of limitations. As with Section 9, the permissive "may apply" language in Section 207 offers a mechanism for favorable federal summary confirmation procedures that is tied to the federal statute of limitations period. Like Section 9, Section 207 does not purport to forbid, displace, or preempt the related state laws that establish analogous enforcement rights or procedures. Section 207 contains the same language and structure that is the basis on which federal courts conclude that Section 9 applies only to federal confirmation procedures and does not preempt the longer statute of limitations under state award enforcement regimes. *See, e.g.*, *Photopaint Techs.*, 335 F.3d at 159-60; *Kentucky River Mills*, 206 F.2d at 120; *In re Consol. Rail*, 867 F. Supp. at 32. The same conclusion applies to Section 207 for the same reasons.

### 2.    Chapter 2's Historical And Contextual Background Confirms That Section 207 Does Not Preempt State Law

Section 207's historical and contextual background confirms what its text compels.

### a.    The Legislative History Shows That No Preemption Was Intended

Chapter 2 of the FAA was enacted against a background of legislative and executive branch anxiety about possible preemption of state law by the New York Convention and its implementing legislation in Chapter 2.  At the 1958 United Nations Conference where the New York Convention was proposed, federalism-based objections in large part drove the U.S. Delegation to "recommend[] strongly" against ratification.  As the Delegation summarized in its Report:

> Because of the nature of the treaty power, the United States would be able as a constitutional matter to adhere to the convention without any reservations whatsoever.   To do so, however, would entail interference with the laws and judicial procedures of a substantial number of the States.  Such action immediately would raise problems of Federal-State relations.  ***This is a matter of particular concern because arbitration historically has been preeminently a field for State action.***  The Federal Government did not enter this field until 1925 and then only in limited fashion.  Since 1925 it has done nothing in the legislative area to broaden its arbitration activity.  Hence, adherence to the convention would be looked upon as a sudden Federal intrusion in an area in which it hitherto had failed to exercise its constitutional legislative authority to the full limits.

1958 Report of the U.S. Delegation to the United Nations Conference on International Commercial Arbitration, 9 Am. Int'l Rev. Arb. 91, 115-16 (2008) (emphasis added).  Ultimately, federalism-based resistance was a major reason that

the United States waited more than a decade before ratifying and implementing the New York Convention—and then, only when the objections had waned due largely to pro-arbitration developments in state laws that moved them in the direction of the Convention.[6]

This background helps to explain why the drafters of Section 207 declined to include a preemption clause, and instead adopted the non-preemption language and framework of Section 9.[7]  It also highlights the significance of a discussion about Chapter 2 that took place before the Senate Committee on Foreign Relations—the gatekeepers, in this context, for U.S. ratification of the Convention and the Senate's passage of its implementing statute, FAA Chapter 2.  In testimony before the Committee, Richard D. Kearney, Chairman of the Secretary of State's Advisory Committee on Private International Law, provided repeated assurances that Chapter 2 would have no effect on state law:

---

[6] *See, e.g.*, Testimony of Richard D. Kearney before the Senate Foreign Relations Committee, S. Exec. Rep. No. 90-10, at 6 (1968) (noting original concerns as to preemption of state law and stating "[t]hat situation has changed rather dramatically over the past 10 years," including because an increasing number of states had adopted model arbitration laws that supported arbitration agreement enforcement and "cover[ed] all of the requirements for internal U.S. practice which are contained in the convention for foreign problems").

[7] Chapter 2's silence on any preemptive effects of Section 207 is also significant because Congress in enacting Chapter 2 expressly addressed other issues related to federalism.  For example, it closed a gap in Chapter 1 of the FAA by establishing federal question jurisdiction in cases "falling under" the New York Convention 2, *see* 9 U.S.C. § 203, and it provided for removal of cases involving awards "falling under" the Convention, *see* 9 U.S.C. § 205.

Chairman: ***Does this legislation have any effect whatever on State laws?***
Mr. Kearney: ***No***, Mr. Chairman, it does not.  It concerns in effect solely the jurisdiction of the Federal district courts.
Chairman: ***And it does not alter or change a citizen's rights under State laws?***
Mr. Kearney: ***Not at all***.
Chairman: ***Does it in any way broaden Federal authority?***
Mr. Kearney: ***Not basically***.
. . . .
Chairman: So there is ***no possible opposition based upon the idea we are now reaching out and subjecting citizens to further arbitrary intervention of the Federal authorities*** or any other authorities in their private affairs.  That is not justified; is that correct?
Mr. Kearney: ***That is correct***.

S. Rep. No. 91-702, at 10 (1970) (emphasis added).

The District Court dismissed this particular legislative history as "far too general to dispute the Congressional purposes in promoting uniformity and finality evinced by the legislation."  Mem. Op. at 15 [JA-___].  But, as noted above, Chapter 2 of the FAA evinces no such uniformity or finality purposes and the legislative history is not cited to contradict, but rather to confirm, Congressional intent.  Far from being "too general," this legislative history was a specific and crucial acknowledgment, consistent with the statutory text, that Chapter 2 does not preempt state law.[8]

---

[8] Consistent with this conclusion, since the enactment of Chapter 2, at least eleven states have adopted international arbitration statutes.  *See* 1 Gary B. Born, International Commercial Arbitration 143, n.893 (2009).  These state statutes differ in many respects from the New York Convention and Chapter 2 of the FAA.  *See*

–26–

### b.    The New York Convention Does Not Preempt State Law

The New York Convention itself, which Chapter 2 implements, provides further support for the conclusion that Section 207 does not preempt state law. Article VII(1) of the New York Convention states that its provisions "shall not . . . deprive any interested party of any right he may have to avail himself of an arbitral award in the manner and to the extent allowed by the law or the treaties of the country where such award is sought to be relied upon."  Known as the New York Convention's "more favorable rights" provision, Article VII has been widely interpreted to mean that "if domestic law . . . make[s] recognition and enforcement easier [than the Convention], that regime can be relied upon."  Albert J. van den Berg, *The New York Convention of 1958: An Overview*, *in* Enforcement of Arbitration Agreements and International Arbitral Awards—The New York Convention in Practice 39, 66 (Emmanuel Gaillard & Domenico Di Pietro eds., 2008).[9]   Moreover, because the New York Convention acknowledges that

---

George K. Walker, *Trends in State Legislation Governing International Arbitrations*, 17 N.C. J. Int'l L. & Com. Reg. 419 (1992).

[9] *See also, e.g.*, Dirk Otto, *Article VII*, *in* Recognition and Enforcement of Foreign Arbitral Awards: A Global Commentary on the New York Convention 443, 452 (H. Kronke et al. eds., 2010) ("Article VII(1) seeks to make enforcement as easy as possible.  Throughout the Drafting Convention, delegates stressed that the purpose of the 'more favorable rights' provision is to enable applicants to rely on the most liberal conditions available for enforcement of awards."); 2 Born, International Commercial Arbitration, at 2723 (noting Article VII(1) "expresses a fundamental

arbitration may be governed by sub-national law, it necessarily contemplates that the more favorable domestic arbitral enforcement law preserved by Article VII might include state law. *See* New York Convention, Art. XI (addressing application in "a federal or non-unitary State," including "within the legislative jurisdiction of constituent states or provinces").

The New York Convention thus embodies—indeed, expressly sets forth—a policy of enabling award holders to choose a more favorable domestic enforcement regime. Because Chapter 2 "enforce[s]" the New York Convention, *see* 9 U.S.C. § 201, it should be interpreted to accord with this policy. In fact, while U.S. courts have not yet addressed the particular issue on appeal here, they have applied the New York Convention's "more favorable rights" policy when interpreting Chapter 2 in other contexts. *See, e.g.*, *Lander Co. v. MMP Invs., Inc.*, 107 F.3d 476, 481 (7th Cir. 1997) (Posner, J.) (relying on Article VII to conclude that Chapter 1 can establish subject matter jurisdiction for cases brought under Chapter 2); *Matter of Arbitration Between Chromalloy Aeroservices and Egypt*, 939 F. Supp. 907, 914 (D.D.C. 1996) (enforcing under Chapter 1 an award annulled in foreign country that cannot be enforced under Chapter 2, and noting that "Article VII . . . merely requires that this Court protect any rights that [plaintiff] has under the domestic laws of the United States").

---

objective of the Convention—which was to facilitate, not limit, the circumstances in which international arbitral awards could be recognized").

### 3. The Non-Exclusivity Of Section 207 Is Entirely Consistent With The Supreme Court's Preemption Principles

The District Court's preemption analysis was not based on the text of Section 207 or its contextual and historical background.  The court ignored these considerations and instead based its preemption analysis on its text-free identification of "two . . . purposes implicit in the statutory scheme"—"procedural uniformity" and "protecting potential defendants' interest in finality."  Mem. Op. at 10-11 [JA-___].  As the analysis above shows, Section 207 does not in fact embody these purposes.  Its statute of limitations is linked only to the Chapter 2's summary arbitral confirmation process, and does not purport to affect state law confirmation mechanisms, including a longer statute of limitations.  Similarly, Section 207's statute of limitations concerns the finality of awards only with respect to the Chapter 2 confirmation process, and not with respect to state law confirmation processes that can differ in many respects, including as to statutes of limitations.

Beyond its flawed analysis (or non-analysis) of Section 207, the District Court committed two broader errors in its application of established preemption principles:  It ignored the Supreme Court's specific jurisprudence governing

–29–

arbitral preemption; and it instead looked to general principles of federal preemption, which it then misapplied.[10]

The District Court ignored the Supreme Court's specialized body of preemption decisions that govern the relationship between the FAA and state law. As noted above, the animating principle in these decisions is the FAA's fundamental pro-arbitration policy. *See supra* pp. 14-16. Consistent with this principle, the preemption of state arbitration law is appropriate only when those laws are ***hostile to arbitration***. *See supra* n.2 (canvassing Supreme Court decisions, all holding that the FAA preempts state laws that unduly burden arbitration). "At best, the Supreme Court's decisions support a conclusion that all state laws seeking to ***limit*** the use of the arbitral process are superseded by federal law." *New England Energy Inc. v. Keystone Shipping Co.*, 855 F.2d 1, 4 (1st Cir. 1998) (emphasis in original). These decisions concern FAA Chapter 1, but their logic, supported by the text and structure of FAA Chapter 2 and the New York Convention, applies to Chapter 2 as well. *See also Mitsubishi Motors*, 473 U.S. at 631 ("[A]t least since this Nation's accession in 1970 to the [New York Convention], and the implementation of the Convention in the same year by amendment of the Federal Arbitration Act, [the "emphatic federal policy in favor

---

[10] As discussed in the next Section, the Court committed a third preemption error in concluding that Section 207's statute of limitations applicable to confirmation of foreign arbitral ***awards*** preempted state law in an entirely separate field—*i.e.*, the enforcement of foreign court ***judgments***. *See infra* pp. 33-45.

of arbitral dispute resolution"] applies with special force in the field of international commerce."). There is no state law hostile to arbitration at issue in this case, and thus no basis whatsoever in the Supreme Court's arbitral preemption jurisprudence for preemption here.

Instead of looking to the Supreme Court's arbitral preemption cases, the court below erroneously looked instead to the Supreme Court's general preemption jurisprudence. *See* Mem. Op. at 6-8, 10, 13-14 [JA-___]. Moreover, it misapplied this general body of preemption law, which does not lead to the conclusion that Section 207 supersedes state law. The first principle of this more general jurisprudence is the "presumption against preemption," which compels courts to assume that state laws "were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress"—particularly where "Congress has legislated in a field which the States have traditionally occupied." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (internal quotations and citations omitted); *see also Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) ("Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law.").

The tradition of state regulation of confirmation of foreign arbitral awards and the historical background to Chapter 2 make it appropriate to apply the

presumption here; and there is no indication whatsoever in the text of Section 207 that the presumption is overcome. *See supra* pp. 22-23.

Further, the, text, structure, and background of Chapter 2 and the New York Convention show that no other factor that might affirmatively support preemption is present here. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) (preemption analysis is "to be informed by examining the federal statute as a whole and identifying its purpose and intended effects"); *id.* (noting that "'the entire scheme of the statute must . . . be considered'") (quoting *Savage v. Jones*, 225 U.S. 501, 533 (1912)). Not only has Congress expressed no purpose in Chapter 2 that would be jeopardized by application of pro-enforcement state arbitral law, it also has never found that arbitration is a field that "must be regulated by its exclusive governance," or is an area where federal regulation is "so pervasive . . . that Congress left no room for the States to supplement it," or that the federal interest in international arbitration is "so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Arizona v. United States*, 567 U.S. __, 132 S. Ct. 2492, 2501 (2012) (citations and internal quotation omitted); *see also Volt*, 489 U.S. at 477 ("The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration.").

To the contrary, the text, structure, and historical background of Chapter 2—as well as the parallel existence of state laws governing international commercial arbitration, *see supra* n.8—make clear that these preemption factors are not present here. Thus, there is no basis for preemption and the negative presumption should hold.

## II. EVEN IF SECTION 207 ESTABLISHED AN EXCLUSIVE FEDERAL STATUTE OF LIMITATIONS FOR ENFORCING A FOREIGN ARBITRAL AWARD, IT DOES NOT PREEMPT THE DISTRICT OF COLUMBIA'S LONGER STATUTE OF LIMITATIONS FOR ENFORCING A FOREIGN JUDGMENT

Independent of whether Section 207 established an exclusive federal statute of limitations for enforcing foreign arbitral awards that preempted state law arbitral confirmation processes—which it did not—the District Court also erred as a matter of law because Commisimpex *is not seeking to enforce a foreign arbitral award*, but rather is seeking to enforce a foreign court judgment. Once again, the text of Section 207, along with the long tradition of state law in this field, establishes that state laws for the enforcement of foreign judgments—including judgments that confirm foreign arbitral awards—are not preempted by Chapter 2. As discussed below, every federal court to have considered the issue has ruled that Chapter 2 of the FAA leaves state judgments laws untouched. Indeed, the U.S. Court of Appeals for the Second Circuit has ruled explicitly that the longer statute of limitations associated with the state-law enforcement of a foreign judgment based

–33–

on an award permitted enforcement even when the Section 207 limitations period had expired. *Seetransport Wiking Trader Schiffahrtsgesellschaft MBH & Co. v. Navimpex Centrala Navala*, 29 F.3d 79, 81 (2d Cir. 1994). These decisions are correct, and the District Court erred by departing from them.

### A.     The Text Of Section 207 Shows That It Does Not Preempt The District Of Columbia's Longer Statute Of Limitations For Enforcing Foreign Judgments Based On Foreign Awards

As discussed above, the permissive "may apply" language in Section 207 establishes that FAA Chapter 2 provides holders of foreign arbitral awards a non-exclusive mechanism for enforcement of those awards in U.S. courts. This statute of limitations provision is tied only to the summary confirmation procedures of FAA Chapter 2, and does not purport to have any effect on state law methods for enforcing arbitral awards—including state law governing the enforcement of foreign judgments based on foreign awards.

Additional text in Section 207 reinforces the inapplicability of this provision to a state law action to enforce a foreign court judgment. In particular, the three-year limitations period applies only to "***an arbitral award*** falling under the Convention," and concerns a request for an "order confirming ***the award***." 9 U.S.C. § 207 (emphasis added). This language establishes that Section 207's statute of limitations concerns only the confirmation of foreign arbitral awards, and cannot conceivably apply to foreign judgment enforcement under state law.

–34–

The text of Section 207 demonstrates how disconnected the District Court's obstacle preemption analysis is from the statute itself. *See* Mem. Op. at 10-12 [JA-___]; *see also, e.g.*, *Arizona*, 132 S. Ct. at 2501 (holding that state law is preempted where "compliance with both federal and state regulations is a physical impossibility" or "the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress") (internal quotation and citation omitted).[11]  Typically, obstacle or field preemption, even in the foreign relations context, is limited to the subject matter specified in the text of the federal statute at issue. *See, e.g.*, *Arizona*, 132 S. Ct. at 2501 (federal laws on alien registration, employment of illegal aliens, and removal of aliens preempt similar state laws); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (federal sanctions against Myanmar preempt different state sanctions against Myanmar); *Hines v. Davidowitz*, 312 U.S. 52 (1941) (federal alien registration scheme preempts different state alien registration scheme).  In this case, by contrast, the District Court preempted a statute of limitations on state judgments law based on a federal scheme about arbitration award enforcement.  This results in over-reaching and is improper.

---

[11] It is clear that it is not a "physical impossibility" to comply with both the D.C. Recognition Act and the FAA in this case.  The District Court did not suggest otherwise.

### B.    The Long Tradition Of State Law Governing The Enforcement Of Foreign Judgments Supports The Conclusion That Section 207 Does Not Preempt The District Of Columbia's Longer Statute Of Limitations For Enforcing Foreign Judgments Based On Awards

It is indisputable that the field of foreign judgment enforcement has historically been regulated the states.  As noted in the Restatement (Third) of Foreign Relations:

> Since *Erie v. Tompkins*, 304 U.S. 64 (1938), it has been accepted that in the absence of a federal statute or treaty or some other basis for federal jurisdiction . . . recognition and enforcement of foreign country judgments is a matter of State law, and an action to enforce a foreign country judgment is not an action arising under the laws of the United States.  Thus, State courts, and federal courts applying State law, recognize and enforce foreign country judgments without reference to federal rules.

Restatement (Third) of Foreign Relations § 481 cmt. a (1987).  Even before *Erie*, the recognition of foreign judgments was a matter controlled by states.  *See, e.g.*, *Aetna Life Ins. Co. v. Tremblay*, 223 U.S. 185, 190 (1912) (recognition of foreign judgments does not present federal question); *Johnston v. Compagnie Generale Transatlantique*, 152 N.E. 121, 123 (N.Y. 1926) (declining to follow *Hilton v. Guyot,* 159 U.S. 113 (1895), and applying instead New York law on the recognition of foreign judgments).

The history of federalism-based resistance to both the New York Convention and Chapter 2 is detailed above.  Notably, there is an even more robust tradition, dating to the nineteenth century, of federalism-based objections to federal

incursions on state control over foreign judgments via the treaty power.  *See* Kurt H. Nadelmann, *Ignored State Interests: The Federal Government and International Efforts to Unify Rules of Private Law*, 102 U. Pa. L. Rev. 323, 323-26 (1954). Control over the enforcement of foreign judgments is such a well-established principle that it survived arguments by commentators that it should be preempted after *Erie R.R. v. Tompkins*, and that enforcement should be governed instead by federal common law.[12]  The United States declined to participate in nineteenth and early twentieth century treaty negotiations on the enforcement of foreign judgments on federalism grounds, *see* Nadelmann, *supra*, and federalism concerns today animate resistance to any U.S. ratification of the Hague Convention on Choice of Court Agreements (which would, if ratified, impose significant obligations to enforce foreign judgments).[13]

---

[12]  *See, e.g.*, Robert C. Casad, *Issue Preclusion and Foreign Country Judgments: Whose Law?*, 70 Iowa L. Rev. 53, 77-80 (1984); Andreas Lowenfeld, *Nationalizing International Law: Essay in Honor of Louis Henkin*, 36 Colum. J. Transnat'l L. 121, 125-31 (1997); Eugene F. Scoles, *Interstate and International Distinctions in Conflict of Laws in the United States*, 54 Cal. L. Rev. 1599, 1605-07 (1966); *see generally Banque Libanaise Pour Le Commerce v. Khreich*, 915 F.2d 1000, 1003 n.1 (5th Cir. 1990) ("Commentators have argued that the enforceability of a foreign judgment in United States' courts should therefore be governed by reference to a general rule of federal law. . . . Nevertheless, courts have concluded that *Erie* governs and therefore the law of the forum applies.") (citation omitted).

[13]  *See, e.g.*, Stephen B. Burbank, *A Tea Party at the Hague?*, 18 Sw. J. Int'l L. 629, 639-41 (2012); William J. Woodward, Jr., *Saving the Hague Choice of Court Convention*, 29 U. Pa. J. Int'l L. 657 (2008); *see also* Hague Convention on Private

Today, most states and the District of Columbia have their own laws governing the enforcement of foreign money judgments, and it is settled that these laws govern recognition and enforcement of foreign money judgments in federal court. *See* Restatement (Third) of Foreign Relations Law, *supra*, § 481 cmt. a; Restatement (Second) of Conflict of Laws § 98 cmt. c (1988); D.C. Code §§ 15-361, *et seq.*; *see also Society of Lloyd's v. Siemon-Netto*, 457 F.3d 94 (D.C. Cir. 2006) (applying D.C. Recognition Act without any analysis of federalism issue).[14] Against this background, the presumption against preemption has even greater force as applied to the issue whether the FAA preempts state law governing the enforcement of foreign judgments based on arbitral awards. *See Wyeth*, 555 U.S. at 565 n.3 (noting that the presumption against preemption is based on "the historic presence of state law" and "does not rely on the absence of federal regulation"). It also makes arguments for field or obstacle preemption based on exclusive federal control over arbitration even less plausible.

---

International Law, Convention on Choice of Court Agreements, June 30, 2005, 44 I.L.M. 1294 (2005).

[14] The principle that state law governs the enforcement of foreign judgments is unaffected by the presence of a foreign sovereign in this case. *See* 28 U.S.C. § 1606. *See also First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611, 622 n.11 (1983) ("[W]here state law provides a rule of liability governing private individuals, the FSIA requires the application of that rule to foreign states in like circumstances.").

### C.    Other Courts Have Unanimously Concluded That FAA Enforcement Mechanisms Are Separate From And Do Not Preempt State Laws Governing The Enforcement Of Foreign Judgments

The District Court is the only court that has ever held that any aspect of Chapter 2 of the FAA preempts state laws concerning the enforcement of foreign judgments. Every other court that has considered the relationship between Chapter 2 and state judgments law has ruled that the two legal regimes are entirely distinct, and that Chapter 2 in no way preempts state judgments law. Several courts have made this point even while acknowledging that a party seeking to enforce a foreign judgment based on a foreign award could do so under a state law judgments scheme that was more permissive than Section 207, including with its statute of limitations period. The Second Circuit has expressly affirmed the enforcement of a foreign judgment under a state law statute of limitations that was longer than the three years provided by Section 207. The District Court's decision is irreconcilable with all of these precedents.

In a leading case decided shortly after passage of FAA Chapter 2, *Island Territory of Curacao v. Solitron Devices, Inc.*, 489 F.2d 1313 (2d Cir. 1973), the Second Circuit held that Chapter 2 and the New York Convention do not preempt state law on the recognition of foreign judgments. The Court explained:

> The Convention on Recognition in no way purports to prevent states from enforcing foreign money judgments, whether those judgments are rendered in the enforcement of an arbitration award or

otherwise. . . . ***[S]ince the Convention on Recognition itself and its enforcing [FAA] legislation go only to the enforcement of a foreign arbitral award and not to the enforcement of foreign judgments confirming foreign arbitral awards, New York state law is not preempted*** to the extent that it permits, regulates and establishes a procedure for the enforcement of the foreign money judgment.

489 F.2d at 1318-19 (emphasis added).[15]  The Second Circuit enforced the foreign court judgment rendered in Curacao, even though it acknowledged the possibility that the underlying arbitral award might not actually be confirmable.  *Id.* at 1318 n.4.

In the four decades since *Solitron* was decided, courts have consistently drawn a sharp distinction between foreign arbitral ***awards*** (which are enforceable under the FAA) and foreign court ***judgments*** based on awards (which are enforceable under state law).  *See, e.g.*, *Victrix Steamship Co. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 n.2 (2d Cir. 1987) ("Federal law pertinent to the [New York] Convention is inapplicable because the Convention does not apply to the enforcement of judgments that confirm foreign arbitration awards."); *Fotochrome,*

---

[15] One basis for the court's conclusion that federal arbitral law and state judgments law were entirely distinct, even in the context of international arbitration, was that Section 9 of Chapter 1 of the FAA "makes a very clear distinction between an action on an award and action on a judgment enforcing the award, pointing out that application for an order confirming the award may be made only when 'the parties in their agreement have agreed that a judgment of the court shall be entered upon the award' and on certain other conditions, subject to certain other qualifications." 489 F.2d at 1319 (quoting 9 U.S.C. § 9).  This provision of Chapter 1 underscores that Congress was aware of the distinction between arbitral confirmation and judgment enforcement and took no steps to preempt the latter.

*Inc. v. Copal Co.*, 517 F.2d 512, 518 (2d Cir. 1975) (recognizing that "if the arbitral award actually results in a judgment in the foreign country, it may be enforced as a foreign money judgment in the State of New York, regardless of the limiting provisions of the Convention and subject only to the non-enforcement provisions of [state law on recognition of judgments]") (citing *Solitron*); *Ocean Warehousing B.V. v. Baron Metals and Alloys, Inc.*, 157 F. Supp. 2d 245 (S.D.N.Y. 2001) (enforcing under New York law a Dutch judgment based on an arbitral award); *see also Continental Transfer Technique, Ltd. v. Fed. Gov't of Nigeria*, 800 F. Supp. 2d 161, 164-65 (D.D.C. 2011) (enforcing under the D.C. Recognition Act an English judgment based on a foreign arbitral award).

In addition, several courts have acknowledged that the parallel availability of federal law that governs award confirmation and state law that governs judgment enforcement might permit a party to enforce a judgment based on a foreign award beyond the time period specified in Section 207 and even beyond the substantive defenses to confirmation under Section 207 and the New York Convention. *See First Inv. Corp. v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 751 (5th Cir. 2013) (distinguishing foreign arbitral awards from judgments based on foreign arbitral awards, and acknowledging that a party armed with the latter may be able "to circumvent the New York Convention's three-year statute of limitations"); *Oriental Commercial & Shipping Co. v. Rosseel, N.V.*, 769 F. Supp. 514, 516 n.3

(S.D.N.Y. 1991) (noting that "a party may often avoid relying on the Convention by applying in the rendering jurisdiction for an order confirming the award, which converts the award into a judgment which may be enforced abroad under the appropriate procedures for enforcement of foreign judgments"); *Ocean Warehousing*, 157 F. Supp. 2d at 249 (enforcing a foreign judgment based on a foreign award and ruling that New York Convention defenses "simply do not apply to [a state law] proceeding seeking recognition and enforcement of a foreign judgment, even if that judgment was based on a foreign arbitral award").  These decisions appear to regard the enforcement of a foreign judgment based on a foreign award in these circumstances to be an unavoidable consequence of the formal distinction between arbitral awards and judicial judgments, and of the text and structure of Section 207.

Finally, as noted above, the Second Circuit has enforced a French judgment based on a foreign award even though it recognized that Section 207's limitations period had expired with respect to the underlying award.  *Seetransport*, 29 F.3d at 80.   The District Court in this case acknowledged that *Seetransport* "presented facts very similar to those of the present matter."  Mem. Op. at 15 [JA-___].  It nonetheless attempted to distinguish *Seetransport* and the entire line of cases upon which it was based on the grounds that none of the cases overtly addressed the issue of preemption.  *Id.*   If anything, however, the absence of an explicit

–42–

preemption analysis in these cases only underscores the undisputed principle (undisputed until now, in this case) that state law on judgment recognition, and not federal law on award confirmation, exclusively governs the enforcement of foreign court judgments.

### D. Plaintiff's Attempt To Enforce The English Judgment Under The D.C. Recognition Act Did Not Exploit A "Loophole" In Chapter 2 Of The FAA, But Rather Pursued A Lawful, Parallel And In Many Respects More Burdensome Enforcement Regime

The District Court described Plaintiff's attempt to enforce the English judgment under the D.C. Recognition Act as a "maneuver" to "exploit" a "procedural loophole" in Chapter 2 of the FAA. Mem. Op. at 1 [JA-___]. The speculatively sinister characterization of Plaintiff's lawful attempt to enforce a foreign judgment under operative state law rests entirely on the District Court's erroneous determination that Section 207 established a uniform and exclusive federal state of limitations for arbitral confirmation that, because of its "implicit purpose," preempted the statute of limitations under the D.C. Recognition Act. As explained above, Section 207's relatively demanding statute of limitations is tied to its relatively generous summary confirmation process, but does not purport to affect the many different combinations of prescriptive periods, procedural requirements, and substantive enforcement criteria that prevail under state international arbitration law and especially under state law governing the enforcement of foreign judgments.

In this regard, it is important to note that while the D.C. Recognition Act does have a longer statute of limitations for the enforcement of foreign judgments than Section 207 has for the confirmation of foreign awards, it also imposes additional hurdles to the enforcement of a foreign judgment based on a foreign award when compared to award confirmation under Section 207.

The most salient additional hurdles—on top of the need to secure the foreign judgment based on the award in the first place—concern the substantive criteria by which a court can decide not to enforce the foreign judgment.   The D.C. Recognition Act contains several grounds for denying recognition to a foreign judgment that have no parallel under Chapter 2 or the New York Convention, including that the foreign court lacked personal jurisdiction over the defendant, D.C. Code §15-364(b)(2), that the judgment was obtained by fraud that deprived the losing party of an adequate opportunity to present the case, *id.* § 15-364(c)(2), that the judgment conflicts with another final and conclusive judgment, *id*. §15-364(c)(4), that the foreign court was seriously inconvenient, *id.* §15-364(c)(6), and that the foreign judgment was rendered in that raise substantial doubt about the rendering court's integrity related to the judgment, *id.* §15-364(c)(7).[16]

---

[16] The Defendants invoked and vigorously pressed the first of these grounds for non-recognition below, but the District Court declined to rule on the argument in light of its holding on preemption.  *See* Mem. Op. at 5 n.3 [JA-___].

In sum, while a party choosing to enforce a foreign judgment based on a foreign award does often have available a longer statute of limitations than is available under Section 207, it also typically faces additional hurdles to judgment enforcement compared to confirming an award under Section 207.  The different federal and state enforcement regimes combine procedural and substantive elements differently.   Our federal system of overlapping laws—in which international arbitration is regulated at both the federal and state level, but enforcement of foreign judgments is entirely an issue of state law—gives parties a choice of enforcement means.  This choice is built into the federal system, it is purposeful, and it is based on a long historical pedigree.  It is in no way, as the District Court speculated, a "loophole."

## III.    THE DISTRICT COURT'S HOLDING PRODUCES ANOMALOUS CONSEQUENCES THAT ARE CONTRARY TO FEDERAL ARBITRATION POLICY

The District Court suggested a number of ostensibly untoward consequences that would flow from a ruling in Commisimpex's favor, and in particular that parties holding "stale" but otherwise valid foreign arbitral awards might "breathe new life" into enforcement claims by obtaining an enforcement judgment in a foreign jurisdiction with a longer statute of limitations period than Section 207, and then proceeding on that judgment under a U.S. state recognition law.  Mem. Op. at 12 [JA-___].  According to the District Court, such an outcome

"would potentially eviscerate the protection Congress enacted through § 207 for many award confirmation defendants," and thus "upset the balance between promoting arbitration, on the one hand, and protecting potential defendants' interest in finality that Congress struck in the 1970 enabling legislation." *Id.*

As established above, the District Court was simply wrong to read Section 207 as offering "protection" from the longer state statutes of limitations for enforcing foreign judgments based on arbitral awards. Rather, Section 207 applies only to the summary confirmation processes for awards under Chapter 2 of the FAA (*see supra* pp. 14-33)—or, at most, only to federal and state award confirmation processes, and not foreign judgment enforcement mechanisms (*see supra* pp. 33-45). Once the District Court's erroneous premise about Section 207 falls, its policy concerns collapse.

In fact, it is the District Court's novel decision that introduces potentially dramatic changes into the law, as well as untoward policy consequences. The District Court's sweeping conclusion that Chapter 2 establishes uniform and exclusive federal procedures for foreign award confirmation has implications beyond its application to state statutes of limitations for enforcing foreign judgments based on awards. It entails preemption of every procedural element of state international arbitration law. It also entails preemption of any element of state judgments law that is more permissive, in substance or procedure, than the

FAA.  These consequences would fly in the face of settled law and practice, and magnify the error in the District Court's basic premise about the exclusivity of Section 207 confirmation.

The District Court holding also introduces anomalies into U.S. arbitration law that undermine the policies of the FAA and the New York Convention.  Under the District Court's view, foreign judgments based on non-New York Convention foreign arbitral awards (but not judgments based on New York Convention arbitral awards) can be enforced in the United States under state law beyond Section 207's three-year statute of limitations.  In addition, under the District Court's view, award-based foreign court judgments are treated unfavorably compared to judgments not based on awards.  Both consequences of the District Court's analysis single out New York Convention awards for unfavorable treatment, in violation of the most basic of the FAA's underlying policies—*i.e.*, the recognition and enforcement of mutually agreed-upon arbitration agreements, and the promotion of international dispute resolution.  *See, e.g.*, *AT&T Mobility v. Concepcion*, 131 S. Ct. at 1749 (noting FAA was "designed to promote arbitration"); *Termorio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 933 (D.C. Cir. 2007) (noting that the "Convention's purpose was to encourage the recognition and enforcement of commercial arbitration agreements," and that its "utility . . . [is] in

promoting the process of international commercial arbitration") (internal quotations and citations omitted).

Ultimately, these policies underlying the FAA—and even the purported interest in "finality" raised by the District Court—are best served by enforcement of the English Judgment. Indeed, enforcement of the Judgment within the applicable statute of limitations under the D.C. Recognition Act would help combat the decade-long award evasion by a non-paying State in violation of its agreements, and eliminate further delays and costs, further to the fundamental purposes of both the FAA and New York Convention. *See, e.g.*, *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 665 (2d Cir. 1997) (noting that FAA was enacted "as a means to reduce the costliness and delays of litigation") (internal quotations omitted).

## CONCLUSION

For the foregoing reasons, the District Court's January 8, 2013 Order denying Commisimpex's summary judgment motion should be reversed, and the English Judgment granted recognition and enforcement pursuant to the terms of the D.C. Recognition Act.

Dated: June 21, 2013                    Respectfully submitted,


                                        /s/ Francis A. Vasquez, Jr.
                                        Francis A. Vasquez, Jr.
                                        Jonathan C. Ulrich
                                        Nicolle E. Kownacki
                                        White & Case LLP
                                        701 Thirteenth Street, NW
                                        Washington, DC 20005-3807
                                        (202) 626-3600

                                        Jack Landman Goldsmith, III
                                        1563 Massachusetts Avenue
                                        Cambridge, MA 02138
                                        (617) 384-8159

                                        *Counsel for Appellant Commissions*
                                        *Import Export, S.A.*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains 11,794 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

/s/ Francis A. Vasquez, Jr.
Francis A. Vasquez, Jr.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 21, 2013, I served an electronic copy of the foregoing Brief of Appellant by filing on the CM/ECF system, and two true and correct paper copies by certified mail on the following counsel for Defendants-Appellees Republic of the Congo and Caisse Congolaise D'Amortissement:

Michael R. Lazerwitz
Boaz S. Morag
Jesse D. H. Sherrett
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2000
mlazerwitz@cgsh.com
bmorag@cgsh.com
jsherrett@cgsh.com

Date: June 21, 2013                    /s/ Francis A. Vasquez, Jr.
                                       Francis A. Vasquez, Jr.

## <u>ADDENDUM OF STATUTES AND REGULATIONS</u>

<u>Page(s)</u>

Federal Arbitration Act, Chapter 1, 9 U.S.C. § 1 *et seq.*
(pertinent provisions) ................................................................. 53-54

Federal Arbitration Act, Chapter 2, 9 U.S.C. § 201 *et seq.*
(pertinent provisions) ................................................................. 54-55

D.C. Revised Uniform Arbitration Act,
D.C. Code §§ 16-4401 *et seq.* (pertinent provisions) ................................. 55-56

D.C. Uniform Foreign-Country Money Judgments Recognition Act,
D.C. Code §§ 15-361 *et seq.* ....................................................... 57-60

Convention on the Recognition and Enforcement of Arbitral Awards
(New York Convention) (pertinent provisions)........................................... 61-62

**9 U.S.C. § 9.  Award of arbitrators; confirmation; jurisdiction; procedure.**

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident, then the notice of the application shall be served by the marshal.

**9 U.S.C. § 10.  Same; vacation; grounds; rehearing.**

(a)In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(1)where the award was procured by corruption, fraud, or undue means;

(2)where there was evident partiality or corruption in the arbitrators, or either of them;

(3)where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(b)If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

(c)The United States district court for the district wherein an award was made that was issued pursuant to section 580 of title 5 may make an order vacating the award upon the application of a person, other than a party to the arbitration,

who is adversely affected or aggrieved by the award, if the use of arbitration or the award is clearly inconsistent with the factors set forth in section 572 of title 5.

## 9 U.S.C. § 11.  Same; modification or correction; grounds; order.

In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—

(a)Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
(b)Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
(c)Where the award is imperfect in matter of form not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

## 9 U.S.C. § 201.  Enforcement of Convention.

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter.

## 9 U.S.C. § 203.  Jurisdiction; amount in controversy.

An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

**9 U.S.C. § 205.  Removal of cases from State courts.**

Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal. For the purposes of Chapter 1 of this title any action or proceeding removed under this section shall be deemed to have been brought in the district court to which it is removed.

**9 U.S.C. § 207.  Award of arbitrators; confirmation; jurisdiction; proceeding.**

Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

**9 U.S.C. § 208.  Chapter 1; residual application.**

Chapter 1 applies to actions and proceedings brought under this chapter to the extent that chapter is not in conflict with this chapter or the Convention as ratified by the United States.

**D.C. Code § 16-4422.  Confirmation of Award.**

After a party to an arbitration proceeding receives notice of an award, the party may make a motion to the court for an order confirming the award at which time the court shall issue a confirming order unless the award is modified or corrected pursuant to § 16-4420 or 16-4424 or is vacated pursuant to § 16-4423.

**D.C. Code § 16-4423.  Vacating Award.**

(a) Upon motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if:

(1) The award was procured by corruption, fraud, or other undue means;

(2) There was:

(A) Evident partiality by an arbitrator appointed as a neutral arbitrator;

(B) Corruption by an arbitrator; or

(C) Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;

(3) An arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to § 16-4415, so as to prejudice substantially the rights of a party to the arbitration proceeding;

(4) An arbitrator exceeded the arbitrator's powers;

(5) There was no agreement to arbitrate; or

(6) The arbitration was conducted without proper notice of the initiation of an arbitration as required in § 16-4409 so as to prejudice substantially the rights of a party to the arbitration proceeding.

(b) The court may vacate an award made in the arbitration proceeding on other reasonable ground.

(c) A motion under this section shall be filed within 90 days after the movant receives notice of the award pursuant to § 16-4419 or within 90 days after the movant receives notice of a modified or corrected award pursuant to § 16-4420, unless the movant alleges that the award was procured by corruption, fraud, or other undue means, in which case the motion shall be made within 90 days after the ground is known or by the exercise of reasonable care would have been known by the movant.

(d) If the court vacates an award on a ground other than that set forth in subsection (a)(5) of this section, it may order a rehearing. If the award is vacated on a ground stated in subsection (a)(1) or (2) of this section, the rehearing shall be before a new arbitrator. If the award is vacated on a ground stated in subsection (a)(3), (4), or (6) of this section, the rehearing may be before the arbitrator who made the award or the arbitrator's successor. The arbitrator shall render the decision in the rehearing within the same time as that provided in § 16-4419(b) for an award.

(e) If the court denies a motion to vacate an award, it shall confirm the award unless a motion to modify or correct the award is pending.

**D.C. Code § 15-361.  Short title.**

This subchapter may be cited as the "Uniform Foreign-Country Money Judgments Recognition Act of 2011".

**D.C. Code § 15-362.  Definitions.**

For the purposes of this subchapter, the term:
    (1) "Foreign country" means a government other than:
        (A) The United States;
        (B) The District of Columbia, a state, district, commonwealth, territory, or insular possession of the United States; or
        (C) Any other government with regard to which the decision in the District of Columbia as to whether to recognize a judgment of that government's courts is initially subject to determination under the Full Faith and Credit Clause of the United States Constitution.
    (2) "Foreign-country judgment" means a judgment of a court of a foreign country.

**D.C. Code § 15-363.  Applicability.**

(a) Except as otherwise provided in subsection (b) of this section, this subchapter applies to a foreign-country judgment to the extent that the judgment:
    (1) Grants or denies recovery of a sum of money; and
    (2) Under the law of the foreign country where rendered, is:
        (A) Final;
        (B) Conclusive; and
        (C) Enforceable.
(b) This subchapter does not apply to a foreign-country judgment, even if the judgment grants or denies recovery of a sum of money, to the extent that the judgment is a:
    (1) Judgment for taxes;
    (2) Fine or other penalty; or
    (3) Judgment for:
        (A) Divorce;
        (B) Support or maintenance; or
        (C) Other judgment rendered in connection with domestic relations.
(c) A party seeking recognition of a foreign-country judgment has the burden of establishing that this subchapter applies to the foreign-country judgment.

**D.C. Code § 15-364.  Standards for recognition of foreign-country judgment.**

(a) Except as otherwise provided in subsections (b) and (c) of this section, a court of the District of Columbia shall recognize a foreign-country judgment to which this subchapter applies.

(b) A court of the District of Columbia may not recognize a foreign-country judgment if the:

    (1) Judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law;

    (2) Foreign court did not have personal jurisdiction over the defendant; or

    (3) Foreign court did not have jurisdiction over the subject matter.

(c) A court of the District of Columbia need not recognize a foreign-country judgment, if the:

    (1) Defendant in the proceeding in the foreign court did not receive notice of the proceeding in sufficient time to enable the defendant to defend;

    (2) Judgment was obtained by fraud that deprived the losing party of an adequate opportunity to present its case;

    (3) Judgment or the cause of action on which the judgment is based is repugnant to the public policy of the District of Columbia or of the United States;

    (4) Judgment conflicts with another final and conclusive judgment;

    (5) Proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be determined otherwise than by proceedings  in that foreign court;

    (6) Foreign court, in the case of jurisdiction based only on personal service, was a seriously inconvenient forum for the trial of the action;

    (7) Judgment was rendered in circumstances that raise substantial doubt about the integrity of the rendering court with respect to the judgment; or

    (8) Specific proceeding in the foreign court leading to the judgment was not compatible with the requirements of due process of law.

(d) A party resisting recognition of a foreign-country judgment has the burden of establishing that a ground for nonrecognition stated in subsection (b) or (c) of this section exists.

**D.C. Code § 15-365.  Personal jurisdiction.**

(a) A foreign-country judgment may not be refused recognition for lack of personal jurisdiction if the:

(1) Defendant was served with process personally in the foreign country;

(2) Defendant voluntarily appeared in the proceeding, other than for the purpose of protecting property seized or threatened with seizure in the proceeding or of contesting the jurisdiction of the court over the defendant;

(3) Defendant, before the commencement of the proceeding, had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved;

(4) Defendant was domiciled in the foreign country when the proceeding was instituted or was a corporation or other form of business organization that had its principal place of business in, or was organized under the laws of, the foreign country;

(5) Defendant had a business office in the foreign country and the proceeding in the foreign court involved a cause of action arising out of business done by the defendant through that office in the foreign country; or

(6) Defendant operated a motor vehicle or airplane in the foreign country and the proceeding involved a cause of action arising out of that operation.

(b) The list of bases for personal jurisdiction in subsection (a) of this section is not exclusive. The courts of the District of Columbia may recognize bases of personal jurisdiction other than those listed in subsection (a) of this section as sufficient to support a foreign-country judgment.

## D.C. Code § 15-366.  Procedure for recognition of foreign-country judgment.

(a) If recognition of a foreign-country judgment is sought as an original matter, the issue of recognition shall be raised by filing an action seeking recognition of the foreign-country judgment.

(b) If recognition of a foreign-country judgment is sought in a pending action, the issue of recognition may be raised by counterclaim, cross-claim, or affirmative defense.

## D.C. Code § 15-367.  Effect of recognition of foreign-country judgment.

If the court in a proceeding under § 15-366 finds that the foreign-country judgment is entitled to recognition under this subchapter, to the extent that the foreign-country judgment grants or denies recovery of a sum of money, the foreign-country judgment is:

(1) Conclusive between the parties to the same extent as the judgment of a sister state entitled to full faith and credit in the District of Columbia would be conclusive; and

(2) Enforceable in the same manner and to the same extent as a judgment rendered in the District of Columbia.

**D.C. Code § 15-368.  Stay of proceedings pending appeal of foreign-country judgment.**

If a party establishes that an appeal from a foreign-country judgment is pending or will be taken, the court may stay any proceedings with regard to the foreign-country judgment until the:

(1) Appeal is concluded;

(2) Time for appeal expires; or

(3) Appellant has had sufficient time to prosecute the appeal and has failed to do so.

**D.C. Code § 15-369.  Statute of limitations.**

An action to recognize a foreign-country judgment must be commenced within the earlier of the time during which the foreign country judgment is effective in the foreign country or 15 years from the date that the foreign-country judgment became effective in the foreign country.

**D.C. Code § 15-370.  Uniformity of interpretation.**

In applying and construing this uniform act, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it.

**D.C. Code § 15-371.  Saving clause.**

This subchapter does not prevent the recognition under principles of comity or otherwise of a foreign-country judgment not within the scope of this subchapter.

**Convention on the Recognition and Enforcement of Arbitral Awards**

**Article I**

1. This Convention shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between persons, whether physical or legal. It shall also apply to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought.

2. The term "arbitral awards" shall include not only awards made by arbitrators appointed for each case but also those made by permanent arbitral bodies to which the parties have submitted.

3. When signing, ratifying or acceding to this Convention, or notifying extension under article X hereof, any State may on the basis of reciprocity declare that it will apply the Convention to the recognition and enforcement of awards made only in the territory of another Contracting State. It may also declare that it will apply the Convention only to differences arising out of legal relationships, whether contractual or not, which are considered as commercial under the national law of the State making such declaration.

**Article VII**

1. The provisions of the present Convention shall not affect the validity of multilateral or bilateral agreements concerning the recognition and enforcement of arbitral awards entered into by the Contracting States nor deprive any interested party of any right he may have to avail himself of an arbitral award in the manner and to the extent allowed by the law or the treaties of the country where such award is sought to be relied upon.

2. The Geneva Protocol on Arbitration Clauses of 1923 and the Geneva Convention on the Execution of Foreign Arbitral Awards of 19274 shall cease to have effect between Contracting States on their becoming bound and to the extent that they become bound, by this Convention.

**Article XI**

In the case of a federal or non-unitary State, the following provisions shall apply:

(a) With respect to those articles of this Convention that come within the legislative jurisdiction of the federal authority, the obligations of the federal Government shall to this extent be the same as those of Contracting States which are not federal States;

(b) With respect to those articles of this Convention that come within the legislative jurisdiction of constituent states or provinces which are not, under the constitutional system of the federation, bound to take legislative action, the federal Government shall bring such articles with a favourable recommendation to the notice of the appropriate authorities of constituent states or provinces at the earliest possible moment;

(c) A federal State Party to this Convention shall, at the request of any other Contracting State transmitted through the Secretary-General of the United Nations, supply a statement of the law and practice of the federation and its constituent units in regard to any particular provision of this Convention, showing the extent to which effect has been given to that provision by legislative or other action.